IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br><br> v. <br><br> JORGE LUIS LEAL, <br> Defendant. | Case No. 19–CR–40069–JPG |

## **MEMORANDUM & ORDER**

Before the Court is Defendant Jorge Luis Leal's Motion to Suppress Evidence of Grindr Chats or in the Alternative Dismiss the Indictment. (ECF No. 76). The Government responded. (ECF No. 86). For the reasons below, the Court **DENIES** Leal's Motion.

### I. PROCEDURAL & FACTUAL HISTORY

According to the Complaint, on July 12, 2019, an undercover FBI agent conducted an "investigation on the 'Grindr' online dating application." (Redacted Compl. at 3, ECF No. 10). The agent "posted a profile stating 'Looking for a discrete hookup' with user display name 'Clay' " and "indicated he was 18 years old." (*Id.* at 3–4). Later that day, Leal "initiated a conversation with 'Clay'"; and they "discussed the possibility of meeting for sexual purposes." (*Id.* at 4).

The conversation continued the next day, during which time the agent told Leal that " 'Clay' was 15 years old."[1] (*Id.*). Leal, however, still wanted "to meet with 'Clay' to induce and entice him into engaging in sexual activities." (*Id.*).

The FBI's method of preserving chat logs is to take a video recording of the logs on a cell phone, so agents cannot "always preserve them because [they] can only record one chat at a time . . . ." (Hearing Tr. at 30:23–25). They therefore claim that "[i]t would be impossible" for

---
[1] The Complaint says that the "next day" was July 19, (Redacted Compl. at 4); but Special Agent Raymond Hart testified that was a typo—the next day was indeed July 13, (Hearing Tr. at 32:9–18, ECF No. 162).

agents to record multiple chats at once "because you would have to turn the recorder off, then open it up for the next one . . . ." (*Id*. at 31:9–10). In other words, the FBI often has undercover agents "chatting with numerous individuals, not just on Grindr but on multiple apps"; they are "going back and forth having real-time conversations. In order to record those, you would have to have . . . a running recorder going non-stop." (*Id.* at 44:22–45:2). This raises capacity issues: "[Y]our space on your phone will eat up quickly, and . . . so you have to . . . try to be efficient and try to preserve obviously the most important ones." (*Id.* at 45:2–5). The agents would ideally "preserve all chats, but digital space just doesn't allow that." (*Id.* at 45:5–7). Instead, they typically record conversations "[o]nce age is disclosed," (*id.* at 30:23), or once a crime has been committed, (*id.* at 28:11); that is, when they determine that the logs will be "relevant to a federal violation," (*id.* at 30:1–2). This includes when "someone continues to express interest in someone who's declared themselves to be underage . . . ." (*Id.* at 30:6–7).

At the same time, "Grindr utilizes techniques, and announces as part of its Terms of Service, that once it suspects minors are using its application, it will immediately purge those individuals from its application." (Redacted Compl. at 4). Sure enough, shortly after "Clay" told Leal that he was only 15, the FBI agent's Grindr account was disabled, deleting the chat logs from the agent's phone. (*Id.*).

The next week, on July 19, the FBI agent "created another Grindr account with display name 'Corey' with the same profile picture of the previous Grindr account . . . ." (*Id.*). Leal again made contact, asking, "You home alone?" (*Id.*). Leal "expressed concern about [Corey's] age and not wanting to go to jail" but continued the conversation anyway. *Id.* And that evening, Leal drove to the FBI sting house hoping to receive oral sex from the supposed minor. *Id.* at 5. When he arrived, Leal deleted his Grindr account and, along with it, the conversations he had with "Clay"

and "Corey."[2] Even so, he confessed, (Redacted Comp. at 5), and was later indicted in this Court with one count of "Attempted Enticement of a Minor," (Indictment at 1, ECF No. 16).

Now, Leal argues that the FBI's failure to preserve the "Clay" chat logs constituted suppression of exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. (*See* Leal's Mot. to Suppress at 3–8).

## II.  LAW & ANALYSIS

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property" by the federal government "without due process of law . . . ." U.S. Const. amend. V. And in *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. "Subsequent decisions make plain that this precept translates into an affirmative duty to disclose to defendants all potentially exculpatory evidence, including impeachment evidence." *Anderson v. City of Rockford*, 932 F.3d 494, 504 (7th Cir. 2019). "Moreover, the rule encompasses evidence 'known only to police investigators and not to the prosecutor.' In order to comply with *Brady*, therefore, 'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in [the] case, including the police.'" *Strickler v. Greene*, 527 U.S. 263, 280–81 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437–38 (1995)).

It follows that "to mount a successful *Brady* challenge, a defendant must establish the following: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial." *United States v. Silva*, 71 F.3d

---

[2]  This fact is from Leal's audio-recorded confession. The FBI agent interviewing Leal asked whether he still had the chat logs in his phone, and Leal told him that he deleted the Grindr app when he arrived at the sting house and was approached by law enforcement.

667, 670 (7th Cir. 1995). "Evidence is material only if there exists a 'reasonable probability' that its disclosure to the defense would have changed the result of the trial." *United States v. Silva*, 71 F.3d 667, 670 (7th Cir. 1995) (quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)). "A reasonable probability of a changed result exists where the suppression of evidence 'undermines confidence in the outcome of the trial.'" *Id.* (quoting *United States v. Bagley*, 514 U.S. at 473 U.S. 667, 678 (1985)). Ultimately, "the effect that a particular piece of evidence is likely to have had on the outcome of a trial must be determined in light of the full context of the weight and credibility of all evidence actually presented at trial." *Id.*

For all that, "there is a difference between those situations in which the police fail to disclose to the defendant evidence that it knows to be material and exculpatory, and those situations in which police simply fail to preserve potentially exculpatory evidence." *United States v. Chaparro-Alcantara*, 226 F.2d 616, 626 (7th Cir. 2000). And in *Arizona v. Youngblood*, the Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. 51, 58 (1988).

> In such situations, failure to preserve evidence is not a violation of due process rights unless the defendant can demonstrate: (1) bad faith on the part of the government; (2) that the exculpatory value of the evidence was apparent before it was destroyed; and (3) that the evidence was of such a nature that the petitioner would be unable to obtain comparable evidence by other reasonably available means.

*Hubanks v. Frank*, 392 F.3d 926, 931 (7th Cir. 2004) (citing *Youngblood*, 488 U.S. at 58). "In this context, bad faith means a 'conscious effort to suppress exculpatory evidence . . . .'" *United States v. Sanders*, 207 Fed. App'x 651, 653 (7th Cir. 2006) (quoting *Jones v. McCaughtry*, 965 F.2d 473, 477 (7th Cir. 1992)). And by extension, "a finding of bad faith turns on 'the [government's]

knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.'" *Id.* at 654 (quoting *Youngblood*, 488 U.S. at 56 n.*).

With that in mind, Leal conflates the precepts outlined in *Brady* and *Youngblood*. In brief, *Brady* is inapplicable because it is not as if the Government possessed evidence that it knew to be exculpatory yet failed to disclose it. By all accounts, the Government disclosed all the exculpatory evidence it has. Rather, Leal asserts that Government agents simply failed to preserve the "Clay" chat logs in the first place. That difference is important because a failure to **disclose** exculpatory evidence does not require a showing of bad faith, while a failure to **preserve** exculpatory evidence does. The reason for that distinction partly stems from the Supreme Court's "unwillingness to read the 'fundamental fairness' requirement of the Due Process Clause as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Youngblood*, 488 U.S. at 58; *see California v. Trombetta*, 467 U.S. 479, 488 (1984); *United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002) ("*Brady* prohibits suppression of evidence, it does not require the government to act as a private investigator and valet for the defendant, gathering evidence and delivering it to opposing counsel."). Leal therefore failed to meet the first *Brady* requirement of establishing that the Government suppressed evidence.

Similarly, Leal failed to show that the "suppressed" evidence was favorable or material. He contends that the missing Grindr chat logs—including "Clay's" profile page—might be "probative of a disposition to engage in *legal* sexual activity with an adult," thereby supporting an entrapment defense. (Leal's Mot. to Suppress at 5) (emphasis added). Yet Leal "does not articulate one shred of beneficial testimony that could be expected from" the missing chat logs, "only a vague hope that [they] might establish" that he was somehow *induced* by the FBI to engage in sexual

activity with a minor. *See United States v. Silva*, 71 F.3d 667, 671 (7th Cir. 1995) (rejecting the defendant's argument that the Government's failure to disclose the identity of a confidential informant violated *Brady* because there was not "a 'reasonable probability' that disclosure of [his] identity would have supported entrapment and therefore changed the trial's outcome"). Leal only points to the fact that the "Clay" listed his age as 18—in other words, that Leal was not predisposed to having sex with a minor when he first contacted the agent. But "the effect that a particular piece of evidence is likely to have had on the outcome of a trial must be determined in light of the full context of the weight and credibility of all evidence actually presented at trial." *Id.* And the evidence here includes Leal's confession, where he stated, "I obviously knew it was wrong from the very beginning." *See United States v. Leal*, —F.4th—, 2021 WL 2521595 (7th Cir. 2021) (reversing suppression of confession). While Leal claims that the missing chat logs suggest that he wanted "to engage in legal sexual activity," he ignores the more likely possibility that, as the Government alleges, he continued having sexually explicit conversations with the agent even after it was disclosed that "Clay" was 15. If anything, the chat logs "inculpated, not exculpated," Leal. *See Illinois v. Fisher*, 540 U.S. 544, 548 (2004); *see also Trombetta*, 467 U.S. at 486 ("Whenever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed."); *United States v. Agurs*, 427 U.S. 97, 109–10 (1976) ("The mere possibility than an item of undisclosed information might have helped the defense . . . does not establish 'materiality' in the constitutional sense.").

Finally, assessing his claim under the *Youngblood* standard, Leal also cannot establish that the Government's failure to preserve the chat logs was "a calculated effort to circumvent the disclosure requirements established by *Brady v. Maryland* and its progeny." *See Trombetta*, 467 U.S.at 488. Rather, "[t]he record contains no allegation of official animus towards [Leal] or

of a conscious effort to suppress exculpatory evidence." *See id.* True enough, the FBI's practice is generally to begin recording conversations once age is disclosed, which did not happen. Yet Leal claims that "bad faith can be inferred from the agents['] conduct coupled with the absurd explanation for why the evidence was destroyed." (Leal's Mot. to Suppress at 8). Not so. "[T]o establish bad faith," Leal "must point to much more than purported 'absurdity' or negligence." *See Sanders*, 207 Fed. App'x at 654. Indeed, "[h]e must show that" the FBI agents "**consciously** destroyed evidence [they] **knew** was exculpatory . . . ." *Id.* (emphasis added). As discussed, however, Leal merely hopes that the evidence helps him—yet not only did he fail to show that the missing chat logs have any exculpatory value, he makes no effort at establishing that the agents consciously destroyed them or knew they were exculpatory. So because Leal cannot establish bad faith, this claim too falls short. The Court therefore **DENIES** Leal's Motion.

### III. CONCLUSION

The Court **DENIES** Defendant Jorge Luis Leal's Motion to Suppress Evidence of Grindr Chats or in the Alternative Dismiss the Indictment.

**IT IS SO ORDERED.**

**Dated: Thursday, July 8, 2021**

S/J. Phil Gilbert
**J. PHIL GILBERT
UNITED STATES DISTRICT JUDGE**
